In the Matter of the Application of RICHARD WELLING, Petitioner, for an Order against WILLIAM G. FULLEN and Others, Members of and Constituting the Transit Commission, Respondents.

Supreme Court, Special Term, New York County, October 8, 1937.

*H. Eliot Kaplan*, for the petitioner.

*George H. Stover* [*George H. Stover* and *Frank C. Bowers* of counsel], for the Transit Commission.

ROSENMAN, J.  On August 16, 1937, James J. Walker was appointed by the Transit Commission an assistant counsel.  The resolution of appointment reads as follows:

"August 16, 1937.

" Employees' Resolution No. 953

" On motion, duly seconded, the following resolution was unanimously adopted:

" *Resolved.* That this Commission takes the following action with reference to employees, subject to the approval of the Chairman of the Department of Public Service:

| Appointment under Rule | Annual Salary | To Take Effect |
| --- | --- | --- |
| " James J. Walker, Assistant Counsel..................... | $12,000 | August 16, 1937." |

On the next day the chairman of the Transit Commission sent a letter to the State Department of Civil Service requesting the approval of the Civil Service Commission to the appointment.

On August 21, 1937, the Department of Civil Service wrote to the chairman of the Transit Commission requesting further information as to the length of service, " the responsibilities and features of the duties of the appointee, and a statement as to the qualifications deemed necessary for any appointee to fill this position."  This letter also called attention to the provisions of subdivision 9 of rule VIII of the Civil Service Rules under which the approval of the Civil Service Commission had been requested.  That rule reads as follows: " The Commission may by special action except from examinations under these rules: a. Any person who shall render professional, scientific, technical or other expert service of an occasional and exceptional character; b. Any person who shall render services for which because of their temporary and exceptional character it would not be practicable to hold an examination of any kind.  Such exceptions shall be allowed only in cases where

the compensation in any one year shall not exceed $500; provided, that such limitation of compensation shall not apply to any person employed by the Governor, Comptroller or Attorney-General; and further provided, that the Commission may suspend such limitation of compensation by special resolution in other cases."

On August 25, 1937, the chairman of the Transit Commission wrote to the Department of Civil Service in reply to the last letter, in amplification of their request for approval in which they stated, among other things: " The length of service of the appointee will depend entirely upon the time it takes to complete the assignments given him. Present indications are that it will take at least six months, probably a year and possibly longer. The nature of the assignments is such that the time element cannot be estimated exactly."

The letter proceeded to point out that the services of Mr. Walker would be used in the elimination of twelve grade crossings in the Atlantic avenue improvement in Brooklyn, pursuant to a plan which had originally been proposed in 1932 and which had been under the consideration of the board of estimate and apportionment of the city of New York since that time. The letter also stated that another assignment to be given to him has to do with the Rockaway eliminations of grade crossings which had been held in abeyance pending the negotiations between the city and the railroad for the purchase of the Long Island Railroad's Rockaway Division.

On September 16, 1937, before the Civil Service Commission had acted on this application, this proceeding was commenced by the petitioner, who describes himself as a citizen and taxpayer of the city of New York, and who asks for the following relief: (1) For an order directing the Transit Commission forthwith to terminate the employment of the said James J. Walker; (2) for an order directing the Transit Commission to expunge from its records any and all notations, references or indicia of any such employment; (3) for an order directing the Transit Commission to desist from submitting any payroll or voucher for the payment of any salary or other compensation to the said James J. Walker.

After the commencement of this proceeding but before the return day thereof the Civil Service Commission passed a resolution approving the application of the Transit Commission, reading as follows:

" *Resolved*, That, pursuant to the application of the Transit Commission for the approval of the temporary appointment of James J. Walker as assistant counsel of said Commission, compensation at the rate of $12,000 a year, said James J. Walker is

hereby excepted from the examination under the provision of Civil Service Rule VIII, subdivision 9, it appearing that the services to be rendered are temporary and of exceptional character, and that it would not be practicable to hold an examination of any kind, provided that employment under this resolution shall not exceed a period of six months from August 16, 1937, the limit of compensation under this rule being hereby suspended."

Application was made by the Transit Commission to the chairman of the Public Service Commission for his approval of this appointment, pursuant to the provisions of section 3 of the Public Service Law, which reads as follows:

" § 3. Department of Public Service; divisions. There shall continue to be in the State government a Department of Public Service. The chairman of the Public Service Commission shall be the head of such department and when acting in such capacity shall be known as the chairman of the Department of Public Service. The head of the department shall be the chief executive officer thereof. The appointment or removal of all officers, clerks, inspectors, experts and employees of the department or of any division thereof, and all contracts for special service, shall be subject to his approval. The head of the department shall designate one of the commissioners in the department to act as deputy chairman during the absence or disability of the chairman and during such times such deputy chairman shall possess all the powers of the chairman as head of the department. There shall continue to be in the department a division to be known as the State division and a division to be known as the Metropolitan division. Each division shall have an official seal."

No approval or disapproval has yet come from the chairman of the Public Service Commission pursuant to this application.

On September 28, 1937, several days after the argument of this motion but before final submission of briefs, the Transit Commission adopted the following resolution rescinding their resolution of August 16, 1937:

" *September* 28, 1937.

" Employees' Resolution No. 959

" On motion, duly seconded, the following resolution was unanimously adopted:

" *Resolved.* That this Commission takes the following action with reference to employees:

| Rescission of appointment Under Rule VIII:9 | Annual Salary | To Take Effect |
|---|---|---|
| " James J. Walker, Assistant Counsel. . . . . . . . . . . . . . . . . . . | $12,000 | August 16, 1937." |

On the same day the Transit Commission reappointed Mr. Walker by resolution reading as follows:

"*September* 28, 1937.

"Employees' Resolution No. 960

" On motion, duly seconded, the following resolution was unanimously adopted:

" *Resolved.* That this Commission takes the following action with reference to employees, subject to the approval of the Chairman of the Department of Public Service:

| Appointment Under Rule VIII:9 | Salary | To Take Effect |
|---|---|---|

" (For a period of six months)
James J. Walker Assistant Counsel........... $1,000 a month September 28, 1937."

Payrolls were submitted by the Transit Commission to the comptroller of the city of New York which contain the name of James J. Walker as appointed August 16, 1937, and, so far as the record shows, they have not been recalled. They have not been paid, however, and under existing circumstances will not be paid, for the reason that the approval of the chairman of the Public Service Commission has not been obtained.

The principal facts are not in dispute. The question is chiefly one of law. The petitioner contends that there has been no legal appointment, *first,* because the approval of the chairman of the Public Service Commission has not been obtained; *second,* because the appointment was made before the approval of the State Civil Service Commission was obtained, and, *third,* that the act of the Civil Service Commission in approving the appointment under subdivision 9 of rule 8 of the State Civil Service Rules, was contrary to law.

The court was originally of the opinion that the resolutions of September 28, 1937, which rescinded the prior appointment of August 16, 1937, and made a new appointment as of the later date, rendered academic and moot the questions here presented. However, in conferences called by the court with the attorneys for the parties after the argument of the motion, and in supplemental briefs filed at the request of the court, it was argued by *both* sides that the matter has not become academic.

The petitioner contends that the resolution of rescission by the Transit Commission has no definite legal meaning, and that such resolution may itself legally be rescinded later by the Transit Commission and the original appointment may thereby be revived, unless a judicial order is made declaring the original appointment invalid and ineffective. He further contends that the payroll on

the basis of which the appointee would receive his salary under the original appointment has been submitted to the comptroller of the city of New York for payment and, although not paid, that it still remains subject to approval.

The respondents too contend that the motion has not become academic and they press for a decision. In their supplemental memorandum they argue that the relief requested with respect to the termination of the employment is still a justiciable controversy for they claim that the appointment of August 16, 1937, is legally still effective to the extent that there has been in force without hiatus a legal appointment to date, with the sole proviso that the right to salary cannot date earlier than September 18, 1937. They further contend that the relief requested so far as expunging the record of appointment is concerned cannot be granted and that that question remains for consideration in spite of the rescinding resolution. With respect to the question of submission of payrolls, they state the following in their memorandum, urging that the matter be not now considered moot: " It might seem that this matter had been rendered moot by the submission of payrolls. However, although it appears that payment to appointee has not been allowed, it does not affirmatively appear on what ground it was withheld. Presumably, it was on the ground that *all* the required approvals had not been obtained. As there is nothing to negative the possibility that they might be submitted again under changed circumstances, it appears that this particular matter has not been eliminated and should be decided." On the basis of the grounds urged by the petitioner and by the respondents I have concluded that there still remains a justiciable controversy between the parties, calling for decision by the courts.

The first question presented by the respondents is the capacity of the petitioner to maintain these proceedings. The petition is brought under the provisions of the new article 78 of the Civil Practice Act, effective September 1, 1937 (Laws of 1937, chap. 526). As shown by subdivision 3 of section 1284, the proceeding is in the nature of what has heretofore been known as a mandamus proceeding. If the relief here sought is obtainable in such proceeding the petition may be presented by any citizen. (*Matter of McCabe* v. *Voorhis*, 243 N. Y. 401, 411.) The fact that the relief requested in connection with the payrolls requires negative rather than affirmative action is no bar to a mandamus proceeding. (*Matter of Potts* v. *Kaplan*, 264 N. Y. 110; *Matter of Kraus* v. *Singstad*, 275 id. 302.) If the chief relief requested, viz., the correction of an unlawful record of appointment on the books of the respondents, is proper, the incidental relief sought in connection with the pay-

rolls need not be made the subject of another separate and independent proceeding in equity, as urged by the respondents. The question, therefore, is whether the appointment as it is described by the resolution on the books of the Transit Commission has been made in accordance with law. If it has not, then the remedy is by mandamus to compel that body to undo the effect of that appointment in all respects. (*People ex rel. Schau* v. *McWilliams,* 185 N. Y. 92.)

The resolution involved makes the appointment effective on August 16, 1937. The payroll submitted heretofore by the Transit Commission to the comptroller is based upon the effectiveness of the appointment as of that date.

The petitioner contends that the appointment of the assistant counsel by the resolution referred to, if legal at all by the rule under which it was submitted to the Civil Service Commission, cannot be effective as of August 16, 1937. If he is right in that contention, there is a legal duty on the part of the respondent to correct that entry in so far as it relates to that date. There naturally follows from that duty the corollary duty not to file payrolls or permit payrolls to remain on file with that date as the basic date on which to compute pay.

It is no answer to say that an adequate remedy may later be pursued if and when it appears that a salary is about to be paid dated from August 16, 1937. A citizen need not wait until the time when the payrolls are about to be submitted or paid. More is involved in the legal question presented than merely the question of pay. There are involved all the other important powers and duties which attach to a *de jure* public officer. The resolution makes the appointee a *de jure* officer as of August 16, 1937. The petitioner urges that the law of the State of New York prevents the appointee from becoming a *de jure* officer on that date. The petitioner may be actuated as a citizen to complain of the appointment by other considerations than merely the prevention of an unlawful expenditure of public funds for salary. Although no claim has actually been made in this case that this appointee is not qualified and competent to perform the duties to be assigned to him, a situation might arise where the basis of the proceeding would be the belief that the appointee is so unable to fill the position efficiently that the city's interests might be seriously jeopardized by his actions as a city representative irrespective of whether the appointee drew a salary or not. In such a case, to compel a citizen to wait until such time as the board decided to submit payrolls to the comptroller would deprive him of a very substantial right to review in the courts the legality of the method of appointment.

The appointment of August 16, 1937, in so far as it purports to take effect on August 16, 1937, is ineffective for two reasons: (1) The head of the Department of Public Service has not approved the appointment; (2) the Civil Service Commission did not approve it until September 18, 1937.

The language of section 3 of the Public Service Law so clearly requires approval of this appointment by the chairman of the Public Service Commission that it cannot be deemed legally effective in any respect until the approval is given. Approval is made a condition precedent to the appointment. The statute does not make disapproval a condition subsequent which would terminate employment. To construe it as a condition subsequent would permit any appointee of the Transit Commission to remain a *de jure* officer until the Commission in its own discretion was willing to submit the name to the head of the department for approval. The control over personnel which is vested by the statute in the chairman of the Public Service Commission might easily be circumvented. Officers and employees could be appointed by the score and not submitted for approval for months. Can it be contended that in the meantime those officers and employees would be entitled to salaries and to all the powers of a *de jure* officer? There is no claim of such delay here. Indeed, the appointment was expeditiously submitted for approval. But the possibility of such circumstances fortifies the interpretation which the language clearly conveys, and the fact that even to date no approval has been given to this appointment shows how important it is that the approval come before the taking effect of the appointment.

A similar conclusion is reached with respect to the approval of the Civil Service Commission. The petitioner and the respondent agree that this case involves a position in the competitive class. The Transit Commission sought to obtain from the Civil Service Commission a waiver of examination, on the ground that an examination was not practicable and that the position was one of those included in the language of subdivision 9 of rule VIII of the Civil Service Commission Rules, which in turn was authorized by section 15 of the Civil Service Law.

Under the Constitution and the Civil Service Law the position could not be filled by a *de jure* officer until the approval of the Civil Service Commission. The leading authority to that effect is *People* v. *Ingham* (107 App. Div. 41; affd., 183 N. Y. 547, on opinion of the Appellate Division). Ingham was appointed health officer of the city of Little Falls on February 9, 1904, to take effect March 1, 1904. His position was in the non-competitive class.

After his appointment but before he assumed his duties on March 1, 1904, Ingham was given a non-competitive examination by the civil service commission of the city, and received a certificate of qualification and fitness dated February 29, 1904. In October, 1904, a proceeding in the nature of quo warranto was commenced to oust him from his office on the ground, among others, that his appointment was void under the Civil Service Law.

The court held the appointment illegal because he had not qualified *before* his appointment but after. The court said: " We, however, are of the opinion that the defendant was not eligible for the office of health officer when appointed, and for that reason he was properly ousted from office, and the judgment appealed from should be affirmed. The several provisions of the Civil Service Law clearly indicate that it was the intention of the Legislature that all persons seeking employment in the civil service and who came within the provisions of the Civil Service Law, should be declared to be eligible by certificate of the officers or boards created by such law. It was not the intention of the Legislature that an appointment could be made subject to the approval of such officers or boards. In the non-competitive class the appointing power may name or indicate to the civil service board the person whose appointment is desired, and if the board finds that such person is qualified and fitted for such position and so certifies, such appointment may then be made, and not until then. It would bring the administration of the Civil Service Law into disrepute if an appointment to office covered by it could be legally made, subject only to the approval of the officers charged with the execution of such law. We think such was not the intention of the statute."

The same rule was applied to a position in the competitive class where an appointment was made after the State Civil Service Law became effective but before the Civil Service Commission had had an opportunity to promulgate rules. The court held the appointment invalid even though no rules had been established which could be followed in making the appointment. (*People ex rel. Chamberlain* v. *Knox*, 45 App. Div. 518.)

The same rule was applied to a laborer who had actually served for some time in his position but without prior compliance with the Civil Service Rules. (*Matter of Chiaverini* v. *Murray*, 237 App. Div. 856; affd., 262 N. Y. 573.)

The rule must also be applied to this case. Respondents urge that since the position here involved is in the competitive class, the rule of *People* v. *Ingham* (*supra*) is not applicable. They overlook the authority of *People ex rel. Chamberlain* v. *Knox* (*supra*),

which involved a position in the competitive class. They also ignore the principle expressed by the court in *People* v. *Ingham* (*supra*) as the foundation for the rule which is applicable to all the classified service· " it was the intention of the Legislature that all persons seeking employment in the civil service and who come within the provisions of the Civil Service Law, should be declared to be eligible by certificates of the officers or boards created by such law * * *. It would bring the administration of the Civil Service Law into disrepute if an appointment to office covered by it could legally be made, subject only to the approval of the officers charged with the execution of such law " (pp. 45, 46).

Whether the position be competitive or non-competitive, one condition precedent to a *de jure* appointment is the approval of the Civil Service Commission. Furthermore, it was held in *People ex rel. Rosenthal* v. *Travis* (169 App. Div. 203) that appointments made under subdivision 2 of section 15 of the Civil Service Law, as the one here under discussion, are subject to the rules applying to the non-competitive class. The rule there applied was the rule relating to removal of those in the non-competitive class rather than to their appointment, but there is no distinction in principle between the two.

Not having obtained either the approval of the chairman of the Public Service Commission or the approval of the Civil Service Commission, the appointment as recorded in the books of the Transit Commission is invalid.

Respondents argue that the question of the effective date of the employment is not here involved but only the legality of the action of the Transit Commission in passing the resolution of August 16, 1937.

It is not here decided that the entire action of the respondents was illegal. The actual selection of an appointee for a vacant position must naturally be made before the name and qualifications of the appointee can be submitted to the Civil Service Commission and to the chairman of the Public Service Commission. There can be no objection in law to the recording of such choice by resolution on the records of the respondents. The respondents urge that a decision for the petitioner in this case would permit " any taxpayer to turn immediately upon the appointing officer who had  *  *  * merely taken the first step to initiate an authorized procedure." That contention is not sound. It is not the initiation of the first step which is here made the subject of assault. It is rather the treatment by the respondents of the authorized initial step as though it were the final step in the process — as though on August

16, 1937, the procedure had already been successfully carried through the two necessary steps of approval. It is a violation of the Civil Service Law to seek to make the appointment effective prior to approval by both the Civil Service Commission and the chairman of the Public Service Commission. To that extent the action of the Commission is not authorized by law. The proper resolution would have been one making the appointment effective upon the necessary approvals.

The employment, therefore, must be terminated until such approvals are obtained.

It is no answer to the conclusion here reached that many appointments have heretofore been made in fashion similar to this one, in advance of approval by the Civil Service Commission and in advance of approval by the head of the Department of Public Service. There is no ambiguity in the statute or in the judicial authorities. The fact that in numerous instances a similar procedure has been followed, although not authorized by law, is no bar to the relief now urged by this citizen.

Under the circumstances, it is not necessary to pass at this time upon the contention urged by the petitioner that subdivision 9 of rule VIII of the Civil Service Rules does not cover the appointment here sought to be made.

One of the grounds urged by the petitioner for his contention that this motion has not become academic is that the new appointment of September 28, 1937, raises questions identical with the first appointment. It is true that identical questions are presented. However, only the action of August 16, 1937, is presented by this petition for review by the court; and although the conclusion here reached does affect the later appointment under the *stare decisis* principle, no direct ruling can be made on this motion with reference to the later appointment.

Since the employment under the original resolution has in fact been terminated, no direct order to that effect will be made. The court assumes that if the conclusion here reached is sustained in the appellate courts the employment under the second resolution will also be terminated. In all events there is no obstacle to another proceeding being brought with respect to the second resolution if such proceeding becomes necessary and the petitioner or any other citizen deems it advisable.

In so far as the petitioner requests the respondents to expunge from their records any and all notations of the employment, if the request means the erasure or obliteration of any record, it is denied. The attorney for the petitioner has stated that it was not the

intention to ask for a physical expunging. The records should be corrected as herein directed, but should not be expunged.

The order to be entered should contain a direction to the respondents to make an entry in their records in connection with the resolution of August 16, 1937, to the effect that the resolution is deemed to be of no effect whatsoever and should direct the respondents to cancel any item on their payrolls referring to the name of James J. Walker as assistant counsel under that resolution. Settle order.