In the Matter of PHILIP A. HINES, Appellant, against FIORELLO H. LAGUARDIA et al., Constituting the Board of Estimate of the City of New York, as Trustees of the New York City Employees' Retirement System, et al., Respondents.

In the Matter of RICHARD WELLING, Respondent, against HARRY W. MARSH et al., Constituting the Municipal Civil Service Commission of the City of New York, et al., Respondents. PHILIP A. HINES, Intervener, Appellant.

First Department, January 28, 1944.

*Robert J. Eagar* for petitioner-appellant.

*Seymour B. Quel* of counsel (*Fred Iscol* with him on the brief; *Ignatius M. Wilkinson, Corporation Counsel*), for respondents LaGuardia and others, as members of the Board of Estimate.

*H. Eliot Kaplan* for respondent Richard Welling.

*H. H. Nordlinger* of counsel (*J. M. Dinnes* with him on the brief; *Nordlinger, Riegelman, Cooper & Benetar,* attorneys), for Citizens Budget Commission, Inc., *amicus curiae.*

GLENNON, J. The appellant Philip A. Hines, a man over sixty-four years of age, was in the employ of the city of New York for more than twenty-eight years. According to his petition he became a member of the New York City Employees'

Retirement System as of October 1, 1921, and continued as such until September 3, 1942. He paid into the fund of the New York City Employees' Retirement System by deductions from compensation earned the sum of $9,775.96. Between April 17, 1933, and September 3, 1942, appellant was First Deputy City Clerk in the office of the City Clerk of the City of New York. Among the duties assigned to him was the performance of marriage ceremonies. Prior to the first of May, 1942, William B. Herlands, as Commissioner of Investigation, instituted an investigation of charges that employees in the office of the City Clerk were accepting gratuities and gifts from couples who were married in that office. The Commissioner submitted a report to the Mayor under date of August 29, 1942. In his report he stated: " The Mayor has absolutely no control over, or responsibility for, the employees and administration of the City Clerk's office and its Marriage License Bureau." He recommended that a copy of the report be transmitted to the City Council for its appropriate consideration and action, and in addition thereto that a copy be transmitted to City Clerk Hubbard for his appropriate consideration and action in regard to the appellant herein and others. Apparently neither the City Council nor the City Clerk acted upon the report.

At the insistence of the Mayor the appellant resigned on September 3, 1942. The resignation was accepted by the City Clerk of the City of New York. The same day he filed an application for a retirement allowance, the effective date of retirement to be October 3, 1942. He failed, however, to comply with the provisions which are to be found in section B3–36.0 of the Administrative Code of the City of New York (L. 1937, ch. 929) which reads in part as follows: " Retirement of a member for service shall be made by the board as follows: 1. Any member in city-service may retire upon written application to the board setting forth at what time, not less than thirty days subsequent to the execution and filing thereof, he desires to be retired, provided that such member at the time so specified for his retirement shall have attained the minimum age of retirement provided for the group of which he shall be a member at such time." Subsequently on October 8, 1942, a resolution prepared by the New York City Employees' Retirement System came before the Board of Estimate, as trustees of the System, for consideration and was rejected.

The appellant re-entered the service of the city of New York on November 5, 1942, as Clerk Grade I, Department of Hospitals, at a yearly salary of $960. It is not disputed that between

that date and December 15, 1942, he was continuously employed in the Municipal Sanitarium in Otisville, N. Y. His name appeared on the payroll and he received appropriate compensation for his services. Deductions were made from his salary during that period as required by the New York City Employees' Retirement System. On November 9, 1942, appellant again filed an application for retirement with the System and on December 15, 1942, his resignation became effective. The re-entry into city service undoubtedly was for the purpose of curing the defects in the prior application to which reference has been made. The new application came on before the Board of Estimate on January 14, 1943. The record shows that there were sixteen negative votes cast against the resolution, as a result of which the application was denied. Apparently no charges were served upon appellant at any time during the entire period.

The main question at issue is: Did the Board of Estimate, acting as trustee of the Retirement System, have discretionary powers to reject the resolution approving a service retirement for appellant on January 14, 1943? It should be noted that the opening sentence of section B3–36.0 of the Administrative Code states: "Retirement of a member for service shall be made by the board as follows:", and then follows the opening: "Any member in city service may retire upon written application to the board * * *." Nothing whatever is said which in any way refers to the discretion of the board. It seems to us, therefore, that since the appellant had complied with the statutory provisions and the Board of Estimate has no discretionary power, he was entitled as a matter of right to the benefits which accrued by virtue of his membership in the New York City Employees' Retirement System. (See *Matter of Pierne* v. *Valentine*, 291 N. Y. 333.)

The court at Special Term ruled that the appellant was not in the city service on November 9, 1942, when he filed his application for retirement and further that he was not validly reappointed until December 14, 1942. The basis of the holding was that the Civil Service Commission of the City of New York did not formally approve of the appointment until December 14, 1942. However, the fact remains that the appellant was appointed on November 5, 1942, and assigned to the Municipal Sanitarium at Otisville, N. Y. Needless to say he had no knowledge of any delay either upon the part of the Department of Hospitals of the City of New York or upon the failure of the Civil Service Commission to act expeditiously. Appellant's

application, bearing No. 28852, was sworn to by him on November 9, 1942. Under date of November 24, 1942, Eugene R. Canudo, Secretary of the Department of Hospitals, formally certified to the Civil Service Commission that the services of appellant were required in the department, and on December 4, 1942, the payroll bureau of the Civil Service Commission stamped the approval of the appointment.

The affidavit of the secretary of the Department of Hospitals indicates that at the time the appointment was made in 1942 there were more than 3,000 vacancies in the Department mainly in the lower salaried positions; that during that year there were 280 vacancies in the position of Clerk Grade 1, and furthermore, that there had been no eligible list in existence for the position of Clerk Grade 1 since 1940. The affidavit states that in order to be able to furnish the numerous services which it performs, the Department of Hospitals has found it necessary in the past to make a substantial number of provisional appointments. The problem is particularly acute where an institution is outside the city limits, such as Otisville Sanitarium, which is near Middletown, N. Y. According to Commissioner Morton of the Municipal Civil Service Commission:

" Rule V, § IX, paragraph 6 of the Rules of the Municipal Civil Service Commission was adopted in 1896. During the entire time that I have been a member of the Commission, and, so far as I am aware, ever since the adoption of Rule V, § IX, paragraph 6, it has been the uniform practice of the Commission to authorize an appointing officer to make a provisional appointment to a position for which no eligible list existed from which it was possible to obtain eligibles willing to accept the position. In such case a certificate is forwarded by the appointing officer to the Commission setting forth the identity of the appointee, the position involved and the qualifications of such appointee.

" The Commission thereupon determines whether there is an existing eligible list for such position or whether some other eligible list has been designated as appropriate. In the absence of such eligible list, or of competitive eligibles on an appropriate list willing to accept such appointment, the Commission approves the payroll of the provisional appointee in such position. At the same time the Commission inquires into the qualifications of such appointee in order to determine whether it will approve the continued provisional employment of such appointee.

"The reasons for this practice are the necessity of having the essential work of the City performed without the delay which would be entailed in securing prior approval of the Municipal Civil Service Commission before making a provisional appointment. In each instance, however, the Commission passes upon the appointment and its compliance with the Civil Service Law and Rules of the Commission, a short time after such appointment is made. No employment in such position may be continued without the approval of the Commission. Thousands upon thousands of provisional appointments have been made in accordance with this practice which was followed by the Department of Hospitals in appointing Philip A. Hines provisionally to the position of Clerk, Grade 1. In each case where the appointment of a provisional has been made and the Commission has subsequently approved the filling of the vacancy in this manner, the certification of the payroll has always related back to the time when the provisional appointee commenced the performance of his duties." It appears therefore that the statute (Civil Service Law, § 15, subd. 1) has been construed for many years by the Civil Service Commission to mean that when applicants for provisional appointment are certified as eligible such certificate is deemed effective as of the date of appointment. There is nothing in the statute which forbids this. Uniform practice by public officials construing statutes affecting the departments relating to their office is entitled to great weight. In *City of New York* v. *New York City Ry. Co.,* 193 N. Y. 543, at p. 549, Judge VANN said in part: "So, when the meaning of a statute is doubtful, a practical construction by those for whom the law was enacted, or by public officers whose duty it was to enforce it, acquiesced in by all for a long period of time, in the language of Mr. Justice NELSON, 'is entitled to great, if not controlling, influence.' (*Chicago* v. *Sheldon,* 9 Wall. 50, 54.) In *People ex rel. Williams* v. *Dayton,* (55 N. Y. 367) the practical construction of a doubtful statute by the legislative and executive departments, continued for many years, was held to have 'controlling weight in its interpretation.' To the same effect is the case of *Power* v. *Village of Athens,* (99 N. Y. 592.) It is held to have great weight even in the construction of the Constitution itself. (*People* v. *Home Insurance Co.,* 92 N. Y. 328, 337; *People ex rel. Einsfeld* v. *Murray,* 149 N. Y. 367, 376.)"

In all fairness to applicants for provisional appointment they should not be deprived of what is their just due, particularly where as here, the Civil Service Commission has simply followed a practice that has been pursued for years.

The decision of this court in *Matter of Welling* v. *Fullen* (164 Misc. 456, affd. 252 App. Div. 856) cited by the court at Special Term is distinguishable. There the appointment was never approved by the head of the Department of Public Service and consequently was ineffective. The order appealed from merely provided that the Transit Commission make an entry in their records that an original resolution for appointment later rescinded was of no effect. Here the Civil Service Commission has certified the appointment of the appellant as of the date when he entered the service on November 5, 1942, and he has been paid accordingly. His right to retire which followed his being in the city service must likewise be deemed to have been effective from and after that date.

For the reasons assigned, the orders appealed from should be reversed, with twenty dollars costs and disbursements, and the motion of petitioner Philip A. Hines for an order, pursuant to article 78 of the Civil Practice Act, to compel the Board of Estimate of the City of New York, as head of the New York City Employees' Retirement System, to approve said petitioner's service retirement and grant him a retirement allowance granted.

Cohn and Callahan, JJ., concur; Townley and Dore, JJ., concur with the ruling that the Board of Estimate is without discretion, but otherwise dissent and vote to affirm.

Orders reversed, with twenty dollars costs and disbursements, and the motion of petitioner Philip A. Hines for an order, pursuant to article 78 of the Civil Practice Act, to compel the Board of Estimate of the City of New York, as head of the New York City Employees' Retirement System, to approve said petitioner's service retirement and grant him a retirement allowance granted. Settle order on notice.