In the Matter of MILTON M. BERGERMAN, Individually and as Chairman of Citizens Union of the City of New York, Petitioner, against THOMAS F. MURPHY et al., Constituting the Board of Trustees of Police Pension Fund of the City of New York, et al., Respondents.

Supreme Court, Special Term, New York County, January 30, 1951.

*Samuel D. Smoleff* for petitioner.

*John P. McGrath, Corporation Counsel* (*Morris Himmelfarb* of counsel), for Thomas F. Murphy and others, constituting the Board of Trustees of Police Pension Fund of the City of New York, respondents.

*Charles Haydon* for James E. Furey and another, respondents.

BENVENGA, J. This is a proceeding under article 78 of the Civil Practice Act for an order (1) directing the board of trustees of the police pension fund to rescind the resolutions retiring respondents Furey and Collins as deputy police commissioners and (2) directing said Furey and Collins to restore to the police pension fund any illegal payments made to them, and for other relief.

On July 11, 1950, Furey, who had been a member of the police force for more than twenty years, resigned as first grade detective, and thereupon, pursuant to subdivision f of section B18–4.0 of the Administrative Code of the City of New York (L. 1937, ch. 929, as repealed and re-enacted by Local Laws, 1940, No. 2 of City of New York, validated by L. 1940, ch. 437, § 2) was appointed a deputy police commissioner. He immediately applied for retirement, and on July 17, 1950, the board of trustees of the police pension fund (hereinafter referred to as the Board of Trustees), adopted a resolution, pursuant to subdivision c of said section B18–4.0, that effective July 11, 1950, Furey be retired at an annual pension of $6,000. He resigned as deputy police commissioner on August 24, 1950, and began to receive his pension payments the following day — within forty-four days after his promotion.

The facts in the Collins case follow the same pattern: On August 25, 1950 (immediately following Furey's resignation), Collins who had also been a member of the police force for more than twenty years, resigned as first grade detective and was appointed a deputy police commissioner, to fill the vacancy caused by Furey's resignation. He also applied for retirement, and on September 19, 1950, the Board of Trustees adopted a resolution, effective August 24, 1950, that Collins be retired at an annual pension of $6,000. He resigned as deputy police commissioner on October 31, 1950, and began to receive his pension payments the following day — sixty-seven days after his promotion.

(1) The questions presented involve the construction and constitutionality of subdivision f of section B18–4.0 of the Administrative Code (hereinafter referred to as subdivision f),

pursuant to which Furey and Collins were appointed deputy police commissioners and are now receiving pension payments.

Subdivision f is derived from section 355-a of the Greater New York Charter (added by L. 1918, ch. 651; *Schieffelin* v. *Warren,* 250 N. Y. 396). It provides that any member of the police force " who shall have performed duty on the force for a period of twenty years, and who subsequently shall serve as police commissioner or deputy police commissioner, shall be retired and placed upon the pension roll of such pension fund and granted the pension allowed to a chief inspector in such department."

Subdivision f was construed in *Matter of Kent* v. *Valentine* (184 Misc. 94, affd. 269 App. Div. 831, motion for leave to appeal denied 294 N. Y. 641). It was there held that subdivision f should be read together with subdivision c of the same section (hereinafter referred to as subdivision c). Subdivision c, which governs the pension rights of all members of the police force, provides that any member of the force who shall have elected to contribute on the basis of retirement after twenty years (as in the instant cases of both Furey and Collins), and who has or shall have performed service on the force for at least twenty years, " shall ", upon his written application, be retired and placed on the pension roll of the pension fund and granted an annual pension " of not less than one-half his full salary at the date of his retirement from service." It was accordingly held that a deputy police commissioner upon retirement, is entitled, as a matter of law, to an annual pension of not less than one half of the salary of a chief inspector, and, in the discretion of the Board of Trustees, to any additional amount above that minimum.

Applying the decision in the *Kent* case (*supra*) to the facts in the instant case, both Furey and Collins, upon their retirement, were entitled to a mandatory annual pension of $6,000 (which is one half of the current salary of a chief inspector); and that, as has been stated, is the amount of the pension which was fixed by the Board of Trustees.

(2) It is contended that subdivision f contravenes section 1 of article VIII of the State Constitution, which prohibits a municipality from " giving " public funds to or in aid of any individual.

It is elementary that the constitutional validity of a statute is to be tested, not by what has been done under it, but what may reasonably be done by its authority (*Stuart* v. *Palmer,* 74 N. Y. 183, 188; *Matter of Richardson,* 247 N. Y. 401, 420–421; *People ex rel. Beck* v. *Graves,* 280 N. Y. 405, 410).

What has been done under and by virtue of subdivision f? Furey and Collins, just before their promotion, were first grade detectives, receiving an annual salary of $5,175. Having elected to contribute on the basis of retirement after twenty years of service, and having been members of the police force for more than twenty years, they were eligible for retirement under subdivision c, at an annual pension of not less than $2,587.50 — which is not less than one half of their full salary. By reason of their promotions, they received a salary of $8,500, and, as they had a right to do under the law (see *Matter of Kent* v. *Valentine, supra*), they immediately applied for retirement, and the Board of Trustees, by resolution duly adopted, fixed their pensions at $6,000 — one half of the current salary of a chief inspector. Then, without the necessity of making any further contributions to the police fund (Administrative Code, § B18–3.0, subd. 9, pars. a–c), they immediately became entitled to their pensions, the payments to begin, under subdivision c, upon their retirement. However, although Furey served as deputy police commissioner for a period of forty-four days, and although Collins, who succeeded him, served for a period of sixty-seven days, they could, under the law, have retired immediately upon the adoption of the resolution fixing their pensions. In other words, Furey could have retired within six days after his appointment and Collins, within twenty-four days after his appointment, at an annual pension of $6,000; such pension amounting to $825 more than their salaries as first grade detectives and $3,412.50 more than the pension allowance of a first grade detective.

Not only is this what has actually been done under and by virtue of subdivision f; it is also what reasonably may be done under it. Indeed, although no member of the police force was appointed a deputy police commissioner to succeed Collins, there is nothing in the law which could have prevented such an appointment or even the repetition of the practice.

Applying the test of constitutional validity to subdivision f, and considering not only what has been done under it, but what may reasonably be done by virtue of its authority, I find it difficult, notwithstanding the presumption against unconstitutionality (Black on Interpretation of Laws [2d ed.], pp. 110–118; *People* v. *Pershaec*, 172 Misc. 324, 340–341), to sustain the statute as a constitutional exercise of the legislative power (see *Hoyt* v. *County of Broome*, 285 N. Y. 402, 406–407).

Clearly, the statute cannot be regarded as a " pension " statute; for, where, as in the instant cases, the deputy police commissioner resigns almost immediately after his appointment, the periodic payments are not for past services or for meritorious work. Indeed, such periodic payments cannot be regarded in any other light than as " gifts " of public funds without any consideration therefor. Mindful of the injunction of the Court of Appeals that, " within their powers courts ought to be vigilant especially in these days of burdensome taxation to restrain the questionable and extravagant expenditure of public moneys " (*Schieffelin* v. *Hylan,* 236 N. Y. 254, 268), the statute must be and is declared unconstitutional, as authorizing the gift of public moneys.

It is probably unnecessary to add that, in determining the nature of the allowance authorized by subdivision f the distinction between a " gift " and a " pension " should not be lost sight of. A " gift " is a voluntary transfer of money or property by one to another without any consideration or compensation therefor (*Matter of Pennsylvania Whiskey Distributing Corp.* v. *Bruckman,* 256 App. Div. 781, 783, affd. 282 N. Y. 665); while a " pension " is a periodic allowance made by a government to an individual or to those who represent him on account of past services or some meritorious work done by him (*Matter of McCormick,* 169 Misc. 672, 675; *Matter of Roche* v. *Waldo,* 141 App. Div. 872, 875, affd. 203 N. Y. 610; *Hoyt* v. *County of Broome,* 285 N. Y. 402, 406–407, *supra*).

(3) A different question might have been presented if the granting of the pension, under the circumstances, were made discretionary with the Board of Trustees; in other words, if the statute as originally enacted had not been amended.

Subdivision f, as originally enacted, provided that a member of the police force " who shall have performed duty on such force for a period of twenty years, and for at least six months as police commissioner or deputy police commissioner, may be retired by the mayor and placed upon the pension roll of the police department and granted the pension allowed to a chief inspector in such department."

It will be observed that section 355-a differs from subdivision f in two essential respects. In the first place, section 355-a makes retirement on the pension of a chief inspector discretionary with the Mayor; whereas, under subdivision f, the question of retirement is discretionary with the appointee and the allowance of the pension is automatic and mandatory. Secondly,

the appointee must serve for at least six months as police commissioner or deputy police commissioner; whereas, under subdivision f, he may, as pointed out, retire immediately after the adoption of the resolution fixing his pension.

If, as in the case of section 355-a, the question of retirement on pension were made discretionary with the Mayor or the Board of Trustees, and if the amount of the pension were made to depend on the length of service after appointment, the nature and character of the service performed by the appointee, and other similar circumstances, less difficulty might be experienced in upholding the statute; perhaps little or no difficulty might be experienced if the statute itself were to lay down some such formula or principle to guide the Mayor or the Board of Trustees. As the statute now reads, however, there is no alternative but to nullify it.

(4) The *Schieffelin* and *Kent* cases (*supra*), already referred to, are, to some extent, relied upon by all the parties. While these cases discuss the construction of the statute, they do not involve the question of its constitutional validity.

The *Schieffelin* case (250 N. Y. 396, *supra*) throws light on the history and purpose of the statute. It seems that, prior to the enactment of section 355-a, the police force was governed by civilians — lawyers, army officers or businessmen. Never having been a part of the uniformed force, these civilians were excluded from the benefits of the pension system. With the appointment of Commissioner Enright in January, 1918, a new method was adopted. The then Mayor considered that a man like Mr. Enright, "trained through all the positions upon the police force", was a fit and proper person to head the police department. But by resigning from the force to become police commissioner, Mr. Enright, who had had twenty years' service on the force, and who subsequently served seven years as commissioner, forfeited all right to any pension. It was to remedy this inequitable situation that section 355-a was enacted. The only question involved was whether the statute applied to Mr. Enright, who was in office at the time the statute was enacted. The question was decided in the affirmative.

It would therefore appear that, by amending the law, a statute which was designed to right a glaring injustice, has been completely diverted from its original purpose and intent.

In the *Kent case* (184 Misc. 94, *supra*), the petitioner was a deputy inspector, a man likewise "trained through all the positions upon the police force" before his appointment as deputy

police commissioner. Following his appointment, he applied for retirement and was granted an annual pension of $4,500; that being one half of the then current salary of a chief inspector. He contended he was entitled to an annual pension of $6,000, a pension equal to his full salary as deputy police commissioner, claiming that, for many years, an annual pension in that amount had been awarded to every retiring chief inspector; that, moreover, under subdivision f, the award of such a pension was mandatory upon the Board of Trustees. In holding that the petitioner was entitled, as a matter of law, to $4,500, and that an award above that minimum was within the discretion of the Board of Trustees, SHIENTAG, J., observed that, if the petitioner's contention were sound, then a member of the force appointed a police commissioner or a deputy police commissioner, would be entitled to a mandatory annual pension equal to his full salary and could immediately resign. The court added that "A construction of the statute that would permit of such result should be avoided save under the unyielding power of compulsion" (p. 98).

(5) Having concluded that the statute is unconstitutional, it is unnecessary to consider any of the other problems here involved, except the question whether, under the circumstances, a proceeding under article 78, in the nature of mandamus, may be instituted by a private citizen.

Respondents contend that the proper remedy is a taxpayer's action to restrain or prevent waste of public funds under section 51 of the General Municipal Law (see *Matter of Morse* v. *Ereth,* 273 App. Div. 938, 944, affg. 80 N. Y. S. 2d 321; *Matter of Birch* v. *Huie,* 169 Misc. 1011, affd. 256 App. Div. 1057; *Matter of McArdle* v. *Board of Higher Educ. of City of N. Y.,* 181 Misc. 766, 768). It may be that, in accordance with this principle, the court cannot direct Furey and Collins to restore to the police pension fund the alleged illegal payments made to them. But petitioners also pray for an order directing the Board of Trustees to rescind the resolutions retiring them as deputy police commissioners. It seems to me that, under such circumstances, any private citizen has such an interest in the proper and lawful administration of the police and other pension systems as to enable him to maintain a proceeding under article 78 to compel the Board of Trustees of any such pension system to rescind an alleged illegal resolution, especially where the question raised is one of public importance and concern (*Matter of Andresen* v. *Rice,* 277 N. Y. 271, 281; *Matter of Kornbluth* v. *Rice,* 250 App. Div. 654, 656, affd. 275 N. Y. 597;

*Matter of Welling* v. *Fullen,* 164 Misc. 456, 461, affd. 252 App. Div. 856; 10 Carmody on New York Practice [2d ed.], §§ 623–624).

The petition, therefore, is granted to the extent that the Board of Trustees of the Police Pension Fund is directed to rescind the resolutions retiring defendants Furey and Collins as deputy police commissioners. Settle order in accordance herewith.